Louis SLESIN, Plaintiff,

v.

ADMINISTRATOR, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, Defendant.

No. 85 Civ. 4228(PNL).

United States District Court, S.D. New York.

Oct. 2, 1986.

James Thornton, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Harriet Goldberg, Asst. U.S. Atty., of counsel.

## OPINION AND ORDER

LEVAL, District Judge.

Plaintiff, Louis Slesin, seeks disclosure under the Freedom of Information Act, 5 U.S.C. § 552, of various documents of the Occupational Safety and Health Administration (OSHA) relating to the regulation of nonionizing radiation. OSHA has identified nine documents as responsive to plaintiff's request, has released three in their entirety as well as portions of five others. One document has been withheld. Defendant moves for summary judgment that the redacted discussions are exempt from disclosure under Exemption 5, 5 U.S.C. § 552(b)(5). Plaintiff cross-moves for *in camera* inspection of the redactions and for summary judgment. Plaintiff's cross-motion is denied. Summary judgment is entered for defendants.

*Background*

In 1971, OSHA adopted standards for exposure to nonionizing radiation—electromagnetic radiation in the radiofrequency (RF) and microwave frequency ranges of the spectrum. This radiation is emitted from a number of sources, including radar, communications systems, broadcast transmitters and microwave ovens. According to OSHA, nearly 9 million workers are exposed to such radiation in the regular course of their employment. The 1971 regulation, codified at 29 C.F.R. § 1910.97, stated that an exposure of 10 mW/cm$^2$ (milliwatts per square centimeter) over a six minute period "should not be exceeded without careful consideration of the reasons for doing so."

OSHA enforced § 1910.07 by citing and sometimes penalizing employers who exceeded the 10 mW/cm$^2$ standard in their workplaces. This standard was rendered unenforceable in 1977, however, when the Occupational Safety and Health Review Commission ruled that the word "should" meant that the standard was merely advisory, rather than mandatory. *Swimline Corp.*, 1977 O.S.H.Dec. (CCH) ¶ 20,379. Thereafter, OSHA sought to enforce the nonionizing radiation standard under the "general duty clause," § 5(a)(1) of the Occupational Health and Safety Act, 29 U.S.C. §§ 651 *et seq.* This too was brought to a halt when the Review Commission ruled that advisory standards could not be enforced through the general duty clause. *A. Prokosch & Sons*, 1980 O.S.H.Dec. (CCH) ¶ 24,430. OSHA then published notice that it would revoke many of its advisory standards, including § 1910.97, *see* 47 Fed.Reg. 23,477 (1982), but after receiving adverse public comment decided to retain it, 49 Fed.Reg. 5318 (1984). During the interim period, "OSHA engaged in extensive deliberations addressing the desirability and feasibility of issuing a revised health standard for nonionizing radiation." Strobel Decl. ¶ 13. It is the documents generated during these deliberations that are the subject of this litigation.

*Discussion*

Under the Freedom of Information Act (FOIA), federal agencies are obligated to make available for public inspection vast amounts of information, including "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register." § 552(a)(2)(B). Certain specifically delineated categories of information are exempted, § 552(b)(1)–(b)(9). In any action

challenging the withholding of material under a subsection (b) exemption, the district court "shall determine the matter de novo, ... and the burden is on the agency to sustain its action." § 552(a)(4)(B).

In the instant case, OSHA claims that the withheld portions fall squarely within Exemption 5,[1] § 552(b)(5), which excludes:

inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency

There is a wealth of case law interpreting this provision. As construed by the Supreme Court, Exemption 5 calls for "the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *N.L.R.B. v. Sears*, 421 U.S. 132, 153, 95 S.Ct. 1504, 1517–18, 44 L.Ed.2d 29 (1975), *quoting*, Davis, *The Information Act: A Preliminary Analysis*, 34 U.Chi.L.Rev. 761, 797 (1967). Or, in the words of the D.C.Circuit, in order to be exempt "the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir. 1975). Factual material, however, must be disclosed, *Soucie v. David*, 448 F.2d 1067, 1077 (D.C.Cir.1971) (Bazelon, Ch.J.), unless it is so " 'inextricably intertwined' with policy making recommendations" that its separate disclosure would be impossible, *Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 85 (2d Cir.1979) (Friendly, J.). *See also EPA v. Mink*, 410 U.S. 73, 92, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973). Except for such "inextricably intertwined" material, the statute dictates that "[a]ny reasonably segregable portion of the record shall be provided to any person requesting such record after deletion of the portions which are exempt...." § 552(b).

In order to apply these criteria to a particular document in issue, it is necessary to situate the document and understand "the role it played in the administrative process." *Lead Indus., supra*, at 80. OSHA's decisional process is complex. Final decision-making authority rests with the Secretary of Labor, but development of policy is carried on under the direction and supervision of the Assistant Secretary for Occupational Safety and Health. Before the Assistant Secretary determines if promulgation of a new health standard is appropriate, the OSHA staff examines the relevant health, scientific, technological and economic considerations. Various reports are submitted to OSHA's Regulation Review Committee, and then, if approved, to the Assistant Secretary, with comments or modifications if necessary. The Assistant Secretary may then, as he did in this case, instruct that a Draft Advanced Notice of Proposed Rulemaking and a Draft Options Memo be prepared.

It is plaintiff's contention that the documents produced in this process, if fully disclosed, would reveal a fundamental shift in OSHA policy from a long tradition of protecting workers from nonionizing radiation to the present lack of enforceable standards. Thus, plaintiff argues, the opinions and interpretations included in the redacted materials which counsel in favor of non-enforcement, "embody the agency's effective law and policy," *N.L.R.B. v. Sears, supra*, at 153, 93 S.Ct. at 1517, and should be disclosed. This reading of the facts is unsubstantiated and unsupportable.

The agency's interpretation of the standard as non-mandatory was commanded by the above-cited decisions of the Review Commission. There is no support for plaintiff's contention that the change resulted from any unannounced internal policy decisions. The record reflects that OSHA has at various times since 1980 considered returning to an enforceable standard. No such decision has yet been made. But neither has a final decision been made not to do so. Indeed, OSHA has publicly advised

---

1. It is also claimed that two redactions are covered by Exemption 2, § 552(b)(2), which exempts matters "related solely to the internal personnel rules and practices of an agency." As to these, "plaintiff does not quarrel with the claim of privilege." Plaintiff's Memorandum, at 6 n.*. These two redactions are noted in the concluding section.

that § 1910.97 is within the class of regulations for which mandatory provisions may be proposed in later, scheduled revisions. 49 Fed.Reg. 5319 (1984). Thus, as to the issuance of enforceable standards to fill the present gap in coverage, OSHA is still in the deliberation stage. That does not, however, end the inquiry, for "pre-decisional materials are not exempt merely because they are predecisional...." *Vaughn v. Rosen, supra,* at 1144. It remains to be determined whether the specific materials withheld are "a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Id.*

Plaintiff urges that this determination be made after *in camera* inspection of the documents. Although such inspection is provided for in the Act, § 552(a)(4)(B), it is not to be undertaken in each case. "It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matter." *Weissman v. CIA,* 565 F.2d 692, 698 (D.C.Cir. 1977), *quoted with approval, Lead Indus., supra,* at 88. The standard for agency justification of withheld materials was set forth in the D.C. Circuit's first opinion in *Vaughn v. Rosen,* 484 F.2d 820, 826–28 (1973), and has come to be known as the *Vaughn* index. The decision requires itemized, specific claims of exemption, and a correlation of the justifications offered with each particular portion withheld. In the instant case, the Government has admirably met this standard—only one document was entirely withheld, and the other redactions, with one exception, were short, surgical excisions individually explained— making *in camera* review both unnecessary and unwise. In the following section the documents and claimed exemptions will be considered individually.

*Specific Claims of Exemption*

The six documents involved in this litigation are:

1) Nonionizing Radiation Concept Analysis Paper;

2) Assistant Secretary's Summary, Parts I & II;

3) Research and Analysis Plan—Radiofrequency Radiation, with Workplan and Appendix A;

4) draft Advanced Notice of Proposed Rulemaking;

5) Strobel "Options Memorandum";

6) Weiner to Vance memorandum.

Document 1, the Concept Analysis Paper prepared to inform the Assistant Secretary of the relevant issues, is four pages long. Three segments of a few lines have been redacted. OSHA identifies the redacted material as staff opinions regarding the extent of protection then afforded, "the nature of the agency's position on how to treat 'should' standards," the desirability of a new standard, and suggested target dates for promulgation of a new standard if desired. This description of the redacted portions is fully consistent with the disclosed portion of the document.

The Assistant Secretary's Summary, Document 2, is 14 pages in length, from which six segments have been redacted. The first four redactions are from Part I of the Summary (11 pages). Approximately three of the eleven pages have been withheld, those expressing staff opinion on the desirability and effectiveness of the existing standard, whether to revoke it, the implications of following the staff recommendation, and possible alternatives. Redaction 5 is 1½ pages setting out target dates for completion of the various stages of the standards promulgation process. The final redaction from Document 2 falls under Exemption 2, and is understood to be consented to by plaintiff.

Document 3 is twenty-one pages long; four segments have been redacted. After eleven pages of factual materials on the significance of the risks from nonionizing radiation and "Economic and Technical Profiles," defendants have redacted slightly more than one page discussing alternative strategies. The second redaction, of a few lines, sets forth implications of following the staff recommendation. The third portion withheld falls within Exemption 2 and

is consented to by plaintiff. Finally, the three page appendix to the document is entirely withheld. The Government advises that this portion comprehensively delineates the tasks to be performed and lists approximately 50 recommended target dates.

The largest redaction is from Document 4, a draft Advanced Notice of Proposed Rulemaking. In its final form, such a document would be submitted to the Federal Register for publication. In draft, it is a staff recommendation to the Assistant Secretary suggesting a specific course of conduct and advising on various policy matters. From 51 pages, roughly one-third (17½ pages) have been redacted. The entire redacted portion is the section captioned "Major Issues," which "reflects those areas which, in the judgment of the Regulation Team, require further development." Strobel Decl. ¶ 35. Thirty-five specific issues are identified, with a number of questions raised with respect to each one.

From Document 5, the Draft Options Memo, prepared to be sent from Gary Strobel, Special Assistant to the Assistant Secretary, to John Cogan, Executive Director, Policy Review Coordinating Committee, approximately two of five pages have been withheld. "This document briefly reviews the background of the matter and discusses alternative courses of action, together with the policy reasons for and against each possible action." Strobel Decl. ¶ 36. The redacted portions represent Mr. Strobel's opinions as to the extent of existing protection, the question whether to re-evaluate § 1910.97, the advantages and disadvantages of various options and recommended target dates. This document was never actually sent. (Strobel Decl. ¶ 37).

Finally, a 1½ page memorandum from Sheldon Weiner, Director of the Office of Physical Agents Standards, to his superior, Leonard Vance, Director of Health Standards Programs, was withheld in its entirety. This memorandum contains Mr. Weiner's thoughts on the desirability of retaining or abandoning the "should" standard in § 1910.97.

OSHA has amply discharged its burden of demonstrating that in making the redactions it observed the limits of the lawful exemption. In each case, it explains that the material excised was staff opinions and suggestions offered to superiors during the deliberation concerning whether to issue a new standard, or internal timetables and target dates that would reveal the agency's deliberative process in great detail. All the redacted material falls within Exemption 5's protection of "internal communications consisting of advice, recommendations, opinions, and other material reflecting deliberative or policy-making processes...." *Soucie v. David, supra,* at 1077. OSHA was careful to segregate and disclose factual materials. In all but one instance, it turned over the majority of each document requested. The Declaration by Mr. Strobel provided detailed explanation for each portion withheld, fully complying with the requirements of *Vaughn.*

*Conclusion*

I conclude that the agency has sufficiently demonstrated that the redacted material falls within Exemption 5, § 552(b)(5). There is no need for an *in camera* inspection of the documents. Plaintiff's cross-motion for summary judgment is denied; defendant's motion for summary judgment is granted. Case dismissed.

SO ORDERED.